

Doe           v. Lewiston School Department
Hearing No. 25.048H

# GUARDIANS' MOTION FOR MAINTENANCE OF PLACEMENT
## (ENFORCEMENT OF "STAY PUT" RELIEF)

In their due process complaint dated November 8, 2024, John     and Jane Doe           , parents and legal guardians of Tommy Doe        ("Guardians"), specifically invoked Tommy 's right to maintenance of his educational placement at Spurwink Lewiston Day Treatment during the pendency of this action, pursuant to 20 U.S.C. § 1415(j). Despite the filing of the Complaint, Spurwink continues to insist that Tommy has been discharged and may not return to its school, while Lewiston has taken no action either to maintain his placement at Spurwink or to identify an alternative equivalent day treatment placement for Tommy. As a result, Tommy has been out of school all this week. His Guardians therefore bring this motion to enforce his statutory right to maintenance of his Spurwink Day Treatment placement during the pendency of these proceedings.

## INTRODUCTION

Tommy is nineteen years-old and lives in a group home operated by              in Lewiston. His last agreed-upon IEP with Lewiston Public Schools calls for him to be placed at the Spurwink Lewiston Day Treatment, a state-approved special purpose private school.

Near the end of Tommy's scheduled triennial IEP Team meeting on November 8, Spurwink's representative announced that Spurwink was immediately and unilaterally discharging Tommy from its program due to a behavioral incident that had occurred on November 1, 2024. The IEP Team, however, made no determinations at this meeting concerning (a) whether Tommy's behavior on November 1 was a manifestation of his disability, or (2) whether Tommy's placement should be changed.

Although both Lewiston and Spurwink apparently take the position that Spurwink can discharge an IEP-placed student unilaterally, this position is directly inconsistent with Maine law. The Maine Department of Education issued an administrative letter on November 24, 2021, entitled "IEP REQUIREMENTS FOR OUT-OF-UNIT PLACEMENTS," which applies directly here and states in relevant part:

> "The sending SAU has the administrative responsibility for the education of a student with a disability who has been placed in an out-of-unit placement. **Special Purpose Private Schools (SPPS) and other out-of-unit entities must ensure compliance with IDEA, utilizing the IEP team process and maintaining "stay put" in the event of a dispute (34 C.F.R. §300.518).**
>
> The Department is concerned that some School Administrative Districts, SPPS, and Public Regional Programs believe that the language of MUSER XI.3.I allows a receiving out-of-unit placement to remove a student with a disability from school for any reason, without utilizing the IEP Team process, and without maintaining 'stay put" in the event of a dispute. MUSER IX.3.I requires a receiving placement to ensure compliance with "these

rules and the Individuals with Disabilities Act." While the Department views this language to cover the requirements for a change of placement, and for stay put, it is clear that some School Administrative Districts, SPPS, and Public Regional Programs have not operated with this understanding.

After consulting with counsel, the Department has determined that SPPS and other out-of-unit placements are not in compliance with IDEA when they terminate a student's placement without going through the IEP process. Maine will enforce the federal standard of using the IEP process in the change of placement. Effective immediately, all SAUs must notify the SPPS and out-of-unit placements that in order to continue these placements, they must abide by the federal standard and provide FAPE to eligible students who are placed at SPPS and other out-of-unit placements."

(Emphasis added.)

Following the IEP Team meeting at which Spurwink announced the unilateral discharge, the Guardians filed for due process later that day. Their complaint challenges the unilateral change of Tommy's placement, which has left him without educational services, and specifically invokes the IDEA's "maintenance of placement" or "stay-put" provision, 20 U.S.C. § 1415(j).

## ARGUMENT

The "stay put" mandate requires Lewiston and Spurwink to maintain Tommy's placement at Spurwink Lewiston Day Treatment during the pendency of the due process proceedings initiated by Tommy's Guardians to challenge his unilateral discharge and change of placement.

The IDEA's "stay put" provision—entitled *Maintenance of current educational placement*—provides that

> during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . .

20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518; *Maine Unified Special Education Regulations ("MUSER")*, § XVI.20. This mandatory provision, which the Supreme Court has described as "unequivocal," *Honig v. Doe*, 484 U.S. 305, 323 (1988), is among the most powerful procedural rights protecting students whose educations are governed by the IDEA. It is "intended to maintain some stability and continuity in a child's school placement during the pendency of review proceedings." *Bd. of Educ. v. Ambach*, 612 F. Supp. 230, 233 (E.D.N.Y. 1985).

The U.S. Court of Appeals for the First Circuit has held unambiguously that the stay-put provision "is designed to preserve the status quo pending resolution of administrative and judicial proceedings under the Act." *Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 915 (1st Cir. 1983), *citing Doe v. Anrig*, 692 F.2d 800, 810 (1st Cir. 1982); *see also Doe v. Portland Public Sch.,* 30 F.4th 85, 90 (1st Cir. 2022), quoting *Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 10 (1st Cir. 1999) ("The preservation of the status quo ensures that the student remains in the last placement that the parent and the educational

4

authority agreed to be appropriate.") The stay-put provision, therefore, requires maintenance and public funding of the child's "current educational placement," unless the party opposing this request can establish, through traditional means, grounds for issuance of preliminary injunctive relief. *Brookline*, 722 F.2d at 917. Neither Lewiston nor Spurwink has sought injunctive relief from the IDEA's requirements in [Tommy]'s case.

## CONCLUSION

In view of the automatic operation of IDEA section 1415(j), 34 C.F.R. § 300.518 and MUSER § XVI.20, and the Maine Department of Education's 2021 ruling confirming that the scope of these provisions extends to its approved special purposes private schools, the Hearing Officer should immediately order Lewiston and Spurwink to comply with the law, reverse [Tommy]'s unilateral discharge, and maintain his placement at the Spurwink Lewiston Day Treatment during the pendency of these proceedings.

Dated: November 15, 2024.                    Respectfully submitted,

                                             *Richard L. O'Meara*
                                             Richard L. O'Meara
                                             Counsel for Guardians

MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, Maine 04104-5085
(207) 773-5651

5