EXHIBIT
E

# STATE OF MAINE

## SPECIAL EDUCATION DUE PROCESS HEARING

| | |
|---|---|
| [ Guardian] | ) |
| | ) |
| v. | ) Hearing # 25.048H |
| | ) |
| [ ] SCHOOLS | ) |
| | ) |

## ORDER

On December 20, 2024, [ ] Schools ( ) filed a *Motion to Dismiss* in the above-captioned case. Parents and Legal Guardians (hereinafter, Guardians) filed *Guardians' Objection to [ ]'s Motion to Dismiss* on December 30, 2024. [ ] then filed a *Reply to Guardians' Objection to Motion to Dismiss* on January 9, 2025.

## RELEVANT BACKGROUND

Guardians filed a due process hearing request with the Maine Department of Education (MDOE) on November 8, 2024 as a result of the unilateral discharge of their son (Student) from his educational placement at [ ] ( ), a Maine approved special purpose private school [SPPS]. The discharge was merely announced by the [SPPS] representative at a November 8, 2024 IEP meeting. Notably, it was not a Team decision nor was it endorsed by [ ]. *Motion,* Exh. B. Guardians filed *Guardians' Motion for Maintenance of Placement (Enforcement of "Stay Put" Relief)* on November 15, 2024. The Hearing Officer granted Guardians' motion, reversing [SPPS]'s unilateral discharge and ordering immediate stay put placement for the Student at [SPPS]. At no time has [ ] disputed that Student's placement was and should remain at [ ]. *Motion* at 1. To date, [ ] has not complied with the Hearing Officer's *Order* and has remained steadfast in its position against resuming Student's education pursuant to the current IEP. Hence, the motion and objection thereto regarding dismissal of this case.

## ISSUES

Dismissal of this case presents the Hearing Officer with two issues. The first issue requires a determination of whether [ ] or [SPPS] is the responsible party to ensure Student's stay put placement under IDEA and MUSER. The second issue is whether a compensatory remedy has been properly requested and is warranted.

## DISCUSSION

### Issue 1: Ensuring Stay Put Placement

[ ] has responsibility for the education of students with disabilities residing within its district. MUSER § IV.4.A. Some students needing very specialized services require placement at special purpose private schools (SPPS). There is no dispute [ ] appropriately placed Student at [SPPS] in accordance with IEP meeting procedures. [SPPS] is a Maine approved SPPS.

As an SPPS, [SPPS] is obligated to comply with IDEA and MUSER in its provision of special services to students with special needs. MUSER § IX.3.I. By unilaterally announcing the discharge of Student without IEP Team discussion, a rewritten IEP, and Team consensus at the November 8, 2024 IEP Team meeting, [SPPS] violated its obligations under IDEA and MUSER. [SPPS] effectuated a change of placement in violation of Student's rights. *Id.*; Me. Dep't of Educ. Administrative Letter (Nov. 24, 2021). [SPPS] continues to be in violation of its obligations and responsibilities notwithstanding the Hearing Officer's November 21, 2024 *Order* granting stay put placement.

Guardians argue [ ] maintains responsibility for the actions of [SPPS]. *Guard. Obj.* at 2. Guardians cite MUSER § IV.4.A in pertinent part in support of this position: "Each school administrative unit is responsible for providing special education services to all resident children…" Further citation to MUSER § IV.B by Guardians states that this responsibility extends to special needs students who "attend…private schools on a tuition or contract basis at public expense." Additionally,

MUSER § IV.4(G)2 affords Student the same rights in the private placement as in the public school.

[ ] counters that it continues to fulfill its obligations to Student as the sending school administrative unit (SAU) by communicating with [SPPS] (*Motion*, Exh. B.) and by searching for an appropriate alternative placement (*Motion* at 2.). [ ] asserts that despite its efforts to resume Student's placement, it has no authority to compel [SPPS] to comply with its obligations as an SPPS. *Motion* at 2.

[ ] argues that its responsibility under MUSER is defined as "administrative responsibility". *Reply* at 2. "The sending SAU has the *administrative* responsibility for the education of a child with a disability who has been placed in an out-of-unit placement." (Emphasis added.) MUSER § IX.3.I. The pertinent section goes on to delineate those responsibilities, as it also does the responsibilities of the receiving placement. It has not gone unnoticed that Guardians have cited this same regulation, albeit attaching more importance to the provision therein stating the SAU's responsibility to ensure compliance with the rule, *i.e.*, suggesting [ ] must ensure [SPPS]'s compliance with the stay put placement. *Guard. Obj.* at 2.

The Hearing Officer agrees with [ ] that the express usage of "administrative responsibilities" within the MUSER regulation is the result of intentional drafting. MUSER § IX.3.I is divided into two parts, one delineating the responsibilities of the sending SAU and the other delineating the responsibilities of the receiving placement (here, [SPPS]). [ ]'s responsibility of ensuring compliance with the rule applies to *its* obligation to perform *its* delineated functions stated within that section of the regulation. Similarly, the receiving placement's specific responsibilities include "…(7) Ensuring compliance with these rules and the Individuals with Disabilities Education Act." *Id.* [SPPS], as the receiving placement, is obligated to ensure *its* actions comply with IDEA. The Hearing Officer acknowledges the responsibilities cited by Guardians in MUSER §§ IV.A, IV.B, and IV.(G)2, but determines those as overarching, umbrella responsibilities. On the other hand, MUSER

3

IX.3.I, cited by both parties, narrows the obligations of the SAU and an out-of-unit placement in situations involving private placement, as in the instant case.

Therefore, [ ] argues that Guardians' cause of action is against [SPPS]. In support of its position, [ ] cites *P.N. v. Greco*. Although a complicated case, the fact pattern included the unilateral discharge of an SPPS student by the SPPS. The Court held that the SPPS was subject to IDEA and its regulations and therefore liable under IDEA for discharging the student without following IDEA procedures. *P.N. v. Greco*, 282 F.Supp.2d, 221 (D.N.J. 2003). Further, the Court stated that the state's regulations were "expressly made applicable to private entities providing publicly funded educational programs and services to students with disabilities." *Id.* at 237. This parallels Maine's regulations cited *supra*. The Hearing Officer agrees that [SPPS] is the critically liable party here.

Moreover, in *Greco*, the sending school district, for all practical purposes, acquiesced to the SPPS's action. It did not implement any IDEA procedures in a timely manner to rectify the situation. *Id.* at 239. That is not the case here. [ ] has attempted to persuade [SPPS] of its obligations under IDEA (*Motion*, Exh. B.) and has sought an alternate placement for Student (*Motion* at 2.). Any SAU would be hard pressed to force a recalcitrant SPPS, as [SPPS] here, to comply. [ ] is caught between a rock and a hard place.

Having said that, there must be some consequence that would gain [ SPPS]'s attention such that it might reconsider its contumacious behavior. The Hearing Officer is not privy to the written agreement, if any, between [SPPS] and MDOE regarding SPPS functioning under approval status. Similarly, the Hearing Officer is not privy to the contract terms between [ ] and [SPPS] in providing out-of-unit placement services. While the Hearing Officer does not have jurisdiction to issue any order to MDOE, the Hearing Officer can certainly opine *in dicta*. Clearly [SPPS] is the party demonstrating callous disregard for its obligations to Student under IDEA and Maine regulations. Apparently it is happy to do so believing there will be no consequences. Depending on existing written

agreements, cannot either MDOE or [ ] sue [SPPS] for breach of contract? At a minimum, MDOE could immediately pull [SPPS]'s status as an approved special purpose private school. (Guardians have likewise stated the latter point. *Compl. Invest.* at 3.) With no public funding coming its way, [SPPS] may experience a change of heart.

### Issue 2: Compensatory Remedy

[ ] argues the Guardians did not request any compensatory remedy in their due process hearing request. *Reply* at 1. While that is true, Guardians did argue against [ ]'s *Motion to Dismiss*, stating that placement and compensatory remedies remained at issue. *Guard. Obj.* at 1. Although [ ] averred that an amended complaint should be filed if Guardians wish to add a compensatory remedy to their prayer for relief (*Reply* at 2.), the Hearing Officer does not agree in this case. Guardians' hearing request centered on maintaining Student's placement. Guardians' immediate *Motion for Maintenance of Placement (Stay Put)* was clearly in their favor as a matter of law. But for [SPPS]'s defiance following the Hearing Officer's *Order* enforcing stay put, there was no reason for Guardians to prematurely request a compensatory remedy.

Notwithstanding the discussion above regarding [SPPS]'s liability for maintaining Student's placement and education, the *Greco* case also provides some relief for Guardians. The *Greco* Court held as follows:

"…[S]tate and local educational authorities are ultimately responsible for ensuring that a student's rights under IDEA are protected….But the fact remains that Ridgewood had a non-delegable obligation to ensure that the N.s' rights were not infringed."
*Greco* at 238-239.

The Hearing Officer acknowledges that this was the point made by Guardians' MUSER citations *supra*. However, unlike the school district in *Greco,* it is through no fault of [ ] that Student is without the education and services written in his current IEP. But because this case has its

own complicating factors involving third parties leaving Student in the lurch, the Hearing Officer grants compensatory services under the authority of relief the Hearing Officer finds just.

*In conclusion*, the Hearing Officer rules as follows:

1. [ ]'s *Motion to Dismiss* is granted in part without prejudice to the extent its actions have demonstrated it has met its administrative responsibilities as the sending school administrative unit pursuant to MUSER § IX.3.I.

2. Once Student resumes his education at [SPPS] or another special purpose private school, [ ] shall ensure Student is provided with compensatory education pursuant to the current IEP for services not received for the period of time from November 8, 2024 to the date of the new placement.

It is so **ordered**.

Dated: January 17, 2025

_____
Melanie Frazek, Esq.
Hearing Officer