UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SPURWINK SERVICES INC.,            )
                                   )
            Plaintiff              )
                                   )
        v.                         )        2:25-cv-00026-JCN
                                   )
JOHN DOE, et al.,                  )
                                   )
            Defendants             )

**ORDER ON MOTION FOR PRELIMINARY INJUNCTION**

When Plaintiff, a provider of behavioral health and education services, terminated a student's placement at one of its special purpose private schools, the student's parents requested an administrative due process hearing in accordance with the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., and Maine law.  (Complaint, ECF No. 1.)  Following certain orders issued by the hearing officer in the administrative proceeding, Plaintiff commenced this action seeking declaratory and injunctive relief regarding issues generated in the administrative proceeding.  (*Id.*)

The matter is before the Court on Plaintiff's motion for a preliminary injunction.  (Motion, ECF No. 8.)  Through the motion, Plaintiff asks the Court to enjoin the enforcement of an administrative order and declare that a state regulation conflicts with federal law.  Defendants oppose the motion.  (Responses, ECF Nos. 22–25.)  After hearing and following a review of the parties' filings,[1] the Court denies the motion.

---

[1] The Court also considered the amicus briefs filed by Child Development Services System, Dragonfly Academy, and Essential Learning Solutions.

## STATUTORY BACKGROUND

Under the IDEA, to receive certain federal funds, a state "must provide a free appropriate public education—a FAPE, for short—to all eligible children." *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 580 U.S. 386, 390 (2017). A FAPE includes "special education and related services . . . provided in conformity with [an] individualized education program," or an IEP for short, 20 U.S.C. § 1401(9)(D), which must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399. An IEP is "[a] comprehensive plan prepared by a child's 'IEP Team' (which includes teachers, school officials, and the child's parents) . . . drafted in compliance with a detailed set of procedures." *Id.* at 391. An IEP must include, among other requirements, "a statement of the child's present levels of academic achievement and functional performance," 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(III), "a statement of measurable annual goals" *id.* § 1414(d)(1)(A)(i)(II), and "a description of how the child's progress . . . will be measured and when periodic reports . . . will be provided." *Id.* § 1414(d)(1)(A)(i)(III).

"If parents are concerned that their child is not receiving a FAPE, they can file a complaint with the local educational agency." *Pollack v. RSU* 75, 886 F.3d 75, 79 (1st Cir. 2018) (citing 20 U.S.C. § 1415(b)(6)(A)). Parents "can argue that their child is being denied a FAPE substantively, on the grounds that his or her IEP lacks certain special education or related services," *id.* at 80 (citing 20 U.S.C. 1415(f)(3)(E)(i)), or "that their child is being denied a FAPE due to procedural violations that, for example, significantly

impede the parents' opportunity to participate in the IDEA decisionmaking process." *Id.* (citing 20 U.S.C. § 1415(f)(3)(E)(ii)(II) (internal quotations and modifications omitted).

A parental challenge prompts an "impartial due process hearing" before an officer from the state educational agency—in Maine, the Department of Education (MDOE). 20 U.S.C. § 1415(f)(1)(A), (g); 20-A M.R.S. § 7207-B. In general, the so-called "stay put" provision of the IDEA requires that "the child shall remain in the then-current educational placement of the child" during the pendency of a parental challenge. 20 U.S.C. § 1415(j). Following the educational agency's final decision on the complaint, an "aggrieved party" may file an action in state or federal court seeking relief from the due process hearing decision. 20 U.S.C. § 1415(i)(2)(A).

In addition to the due process hearing remedy, the federal Department of Education (ED) also requires states to create a Complaint Resolution Procedure. *See* 34 C.F.R §§ 300.151–.153; *Millay v. Surry School Department*, 584 F. Supp. 2d 219, 231 (D. Me. 2008). Maine's complaint investigation process does not contain the same procedural protections as a due process hearing, but it permits a broader investigation into a public agency or private school's compliance with Maine's disability education law and is not limited to determining whether a particular student has been provided a FAPE under the IDEA. *See* 20-A M.R.S.A. § 7206. If a public agency or a school fails to comply with an order from the MDOE commissioner, the commissioner may withhold financial aid and shall refer the matter to the Attorney General. *Id.*

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.    The Student's IEP Placement and Termination

Defendant Tommy Doe is a nineteen-year-old student who is eligible to receive special education and related services under the IDEA.  Defendants John Doe and Jane Doe are Tommy's parents and legal guardians.  Plaintiff is a Maine non-profit corporation operating nearly thirty locations throughout Maine which provide behavioral health and education services for children and adults affected by mental health challenges and developmental disabilities.  One such location is Lewiston Day Treatment, a special purpose private school licensed by the State of Maine.

In January 2023, Tommy was attending school within Regional School Unit 12 (RSU 12).  RSU 12 referred Tommy to Spurwink Lewiston Day Treatment (LDT) for specialized instruction and therapy.  RSU 12, Jane Doe, and Plaintiff signed a service agreement memorializing terms for Tommy's care, education, and treatment at LDT. (Service Agreement, ECF No. 8-2.)  One of the terms in the agreement specified that:

> Spurwink may terminate a placement at any time if it believes that such termination is in the best interest of the client or Spurwink.  Notice of such termination shall be promptly given to the parents/legal guardians and referring agency.  The party having legal custody and control of the client, whether parents/legal guardians or referring agency, may terminate the placement at any time.
>
> All parties agree to cooperate to the extent possible in arranging for such termination and transfers to minimize disruptive effects on the client.

(*Id.* at 4.)

---

[2] The following facts are derived primarily from the affidavits and exhibits filed in connection with Plaintiff's pleadings.

In July 2024, Tommy began residing in Lewiston, Maine.  Defendant Lewiston Public Schools (LPS) then became the local education agency with responsibility for his education, replacing RSU 12.  According to Plaintiff, LPS was assigned or assumed all the rights and responsibilities of RSU 12 in the service agreement.  At oral argument, LPS asserted that it never had a contract with Plaintiff. LPS represents that it sometimes contracts with a private school for a particular student, but LPS also places students in private schools without a separate written agreement between the private school and LPS. LPS maintains that the student's IEP constitutes the operative agreement.

In August 2024, Plaintiff suggested to LPS that LDT was not an appropriate placement for Tommy.  In October 2024, Plaintiff decided to recommend at the next IEP team meeting that Tommy's placement end in December 2024 due to safety concerns and Tommy's inability to participate meaningfully in the programs and activities at LDT.

On November 1, 2024, there was an incident involving Tommy which prompted Plaintiff to accelerate the timeline for Tommy's discharge and suspend Tommy temporarily.  On November 4, 2024, Plaintiff informed Tommy's parents and LPS that it intended to end its services to Tommy and recommend discharging Tommy at the upcoming IEP meeting.  At the IEP meeting on November 8, 2024, Plaintiff formally informed the team that it was terminating its services to Tommy.  According to LPS, it had no other appropriate placement available for Tommy.

**B.    The Due Process Hearing**

On the same day, November 8, 2024, John and Jane Doe filed an expedited administrative due process hearing request challenging what they viewed as a unilateral

decision to terminate his placement without the use of the IEP process.  Plaintiff was not a party in the administrative due process hearing.  The Does argued that Tommy had a right to continue to attend LDT under the IDEA stay-put provision and the state implementing regulations.  On November 15, 2024, they filed a motion in the administrative proceeding requesting the continuation of placement.  In a letter to the relevant parties, LPS advised that it did not agree with Plaintiff's decision to terminate Tommy's services and requested that Plaintiff permit Tommy to continue to attend LDT and that Plaintiff comply with the IDEA stay put requirement.  On November 21, 2024, the hearing officer (Defendant Frazek) granted the Does' motion and ordered that Plaintiff's unilateral termination decision be reversed and that Tommy resume his placement at LDT.  (Hearing Officer's Stay Put Order, ECF No. 1-4.)

On December 20, 2024, LPS filed a motion to dismiss the administrative proceeding.  On January 17, 2025, Defendant Frazek, granted in part the motion.  (Hearing Officer's Dismissal Order, ECF No. 1-5.)  Defendant Frazek concluded that as the sending district, LPS had satisfied its administrative oversight responsibilities under the circumstances. (*Id.* at 3–4.)  Defendant Frazek found that Plaintiff failed to satisfy its obligations under Maine regulations and written administrative guidance, which she asserted require special purpose private schools to comply with the IEP process and stay put protections when modifying a student's placement.  (*Id.* at 2, 4.)  She also noted that LPS might be able to enforce compliance by means of a contract claim against Plaintiff, or that MDOE could discontinue Plaintiff's funding by revoking the approval of Plaintiff as a special purpose private school.  (*Id.* at 4–5.)  Defendant Frazek also concluded that LPS

must ensure that Tommy receives compensatory education for the time he has been denied IEP services since November 8, 2024. (*Id.* at 5–6.)

## C.    The State Complaint Resolution Process

Meanwhile, on November 22, 2024, the day after Defendant Frazek issued the stay put order, the Does filed a state complaint investigation request with MDOE seeking Plaintiff's compliance with the stay put order and sanctions (i.e., the loss of Plaintiff's state approval as a special purpose private school) if Plaintiff failed to comply. Plaintiff had the opportunity to respond in the state complaint resolution proceeding. (Response to State Complaint, ECF No. 24-2.) On January 21, 2025, MDOE sent the Does a letter stating that "in light of the decision by the hearing officer . . . the state complaint investigation is closed." (State Complaint Decision, ECF No. 1-7.) MDOE also stated that more agency guidance would follow. (*Id.*)

## D.    Federal Lawsuit

Plaintiff then commenced this action seeking injunctive relief. (Complaint, ECF No. 1; Motion for Preliminary Injunction, ECF No. 8.) Defendants LPS, Frazek, MDOE, Pender Makin, (the MDOE commissioner), John Doe, and Jane Doe oppose the motion. (Responses, ECF Nos. 22–25.) Amici curiae include two other special purpose private schools, Dragonfly Academy and Essential Learning Solutions, and Maine's intermediate educational unit, Child Development Services System, which is responsible for providing early intervention and special education services to children with disabilities from birth through five years old. (Amicus Briefs, ECF Nos. 41–42.)

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). A district court must decide whether the party seeking a preliminary injunction has carried the burden of establishing that the balance of four factors weighs in its favor:

> (1) the movant's likelihood of success on the merits, (2) whether and to what extent the movant will suffer irreparable harm in the absence of injunctive relief, (3) the balance of relative hardships, and (4) the effect, if any, that an injunction or the lack of one may have on the public interest.

*Becky's Broncos, LLC v. Town of Nantucket*, 138 F.4th 73, 77 (1st Cir. 2025) (quotation marks omitted). "[T]he four factors are not entitled to equal weight in the decisional calculus; rather, likelihood of success is the main bearing wall of the four-factor framework." *Corporate Technologies, Inc. v. Harnett*, 731 F.3d 6, 9–10 (1st Cir. 2013) (quotation marks and modifications omitted).

## DISCUSSION

### A.    Likelihood of Success

#### 1.    Due Process Claim

In Count I of its complaint, Plaintiff seeks a declaratory judgment against Defendants Makin and Frazek in their official capacities pursuant to the Due Process Clause of the Fourteenth Amendment. Plaintiff asks the Court to issue an injunction prohibiting enforcement of Defendant Frazek's orders because Plaintiff was not a party to the administrative proceeding.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "This guarantee has both substantive and procedural components." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006). In either context, "a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005).

The procedural component of the due process guarantee "normally requires notice and an opportunity for some kind of hearing," but "[w]hether the opportunity needs to be furnished before the seizure or whether a post-seizure opportunity is sufficient depends on the circumstances." *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (quotation marks omitted). Courts determine which procedural protections are required "according to a sliding scale, balancing a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990).

As Plaintiff notes, it is an "axiom" of due process that "a person cannot be deprived of . . . legal rights in a proceeding to which he is not a party." *National Association of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 42 (1st Cir. 2009) (quoting *Martin v. Wilks*, 490 U.S. 755, 758 (1989). However, some degree of "[i]mpact" is not the same thing as a deprivation of "legal rights." *Id.* Plaintiff maintains that a due process hearing officer has no authority to issue orders to private schools and

that neither state nor federal law contains a means to enforce a hearing officer's order directing a private school to take certain action.  Defendants do not disagree with this principle.

Given the recognized lack of authority of a hearing officer to issue an enforceable order directing a private non-party to take certain action (e.g., readmit Tommy), the Court discerns no legal right or interest of which Plaintiff has been deprived. That is, Plaintiff does not contend, and the record does not otherwise reflect, that Plaintiff's ability to provide services has been altered or that it has been deprived of any governmental funding.

Instead, the record establishes that MDOE, the one entity with the authority to impact Plaintiff's ability to provide services to public school students, has not done so and has consistently stated that it perceives no legal basis to support any action against Plaintiff. When other courts have considered circumstances where a governmental official or agency has issued an opinion but lacks an enforcement mechanism or the authority to enforce its opinion without judicial intervention, courts have generally not found a due process claim ripe for adjudication in federal court.  *See, e.g.*, *Thomas v. Genova*, 698 F. Supp. 3d 493, 514 (E.D.N.Y. 2023) ("In the land-use context, a constitutional [due process] claim is not ripe after initial unfavorable actions by lower employee and only becomes ripe if "Plaintiffs have obtained a final, definitive position as to how they could use the property from the entity charged with implementing the zoning regulations"); *United States v. Capital Tax Corp.*, No. 04 C 4138, 2007 WL 488084, at *3 (N.D. Ill. Feb. 8, 2007) (finding that although an administrative order issued without a hearing, "the statutory scheme is set up so that no *deprivation* occurs until after a judicial hearing because "[t]he [administrative

order] is not self-enforcing, and the EPA lacks the power to enforce [it]" and must instead file suit in district court to enforce it); *Silent Woman, Ltd. v. Donovan*, 585 F. Supp. 447, 453 (E.D. Wis. 1984) (reasoning that, while "[the statute] grants the defendant broad investigative powers" it does not grant the "power to close down any enterprise it determines to be in violation of the Act," which means "there can still be no due process violation because the defendant has no power to effect a deprivation of the claimed interest").

The reasoning of other courts on this issue is sound. Defendant Frazek's orders are not self-enforcing, the MDOE has taken no action to enforce the orders or otherwise compel Plaintiff's compliance, and the record lacks evidence of any pending judicial enforcement action. Plaintiff, therefore, has not identified a deprivation of a property or liberty interest as required to support a due process claim. Accordingly, Plaintiff has failed to establish a likelihood of success on its due process claim.

### 2.    IDEA-Related Claim

In Count II of Plaintiff's complaint, Plaintiff seeks a declaratory judgment that it has no FAPE or stay put obligations and, therefore, that MDOE exceeded its lawful authority when the hearing officer (Defendant Frazek) ordered Plaintiff to maintain Tommy's placement with the prospect that Plaintiff's approval as a special purpose private school would be revoked if Plaintiff failed to maintain the placement. Plaintiff asks the Court to enjoin enforcement of Defendant Frazek's stay put order because it allegedly violates the IDEA and its implementing regulations. Plaintiff also asks the Court to "strike

down the clause in [Maine Unified Special Education Regulation (MUSER)] IX.3.I.(7) that conflicts with the IDEA." (Motion at 20.)

Plaintiff argues that the plain language of the IDEA creates a series of overlapping obligations for public agencies but not for private schools. For example, a local education agency is eligible for federal funds if it follows a plan that provides assurances of compliance to the state education agency, 20 U.S.C. § 1413, and a state is eligible for federal funds if it follows a plan that provides assurances of compliance to the federal education agency, *id.* § 1412(a). The statute contemplates that local and state education agencies may choose to meet their obligations for some students by using private school placements. *See id.* § 1412(a)(10). While the statute gives private schools certain rights, *see, e.g.*, *id.* § 1412(a)(10)(A)(v), it does not itself impose legal duties on private schools. *See St. Johnsbury Acad. v. D.H.*, 240 F.3d 163, 171 (2d Cir. 2001) (noting that "IDEA applies only to the State and other public agencies, not to private schools in which public agencies may place children"); *McElroy v. Pacific Autism Center for Education*, No. 14-CV-04118-LHK, 2016 WL 3029782, at *11 (N.D. Cal. May 27, 2016) (describing a consensus among courts "that the IDEA does not apply to private schools because private schools are not a 'State educational agency, State agency, or local educational agency'" as defined in the statute). Rather, the statute charges the state education agency with determining whether private schools meet standards applicable to public schools "and that children so served have all the rights the children would have if served by [public] agencies." *Id.* § 1412(a)(10)(B)(ii); *see also*, 34 C.F.R. § 300.325(c) ("Even if a private

school or facility implements a child's IEP, responsibility for compliance with this part remains with the [local] agency and the [state agency]").

A principal question here is how local and state agencies may ensure that children placed in private schools are treated the same as those in public schools, including with respect to the requirement that all modifications to a private school student's placement occur within the IEP process and that the student has the right to stay put during a dispute. Because the federal statute and regulations do not specifically address the question, when the issue has occasionally arisen, education agencies and courts have taken different approaches in different states. *See* Blakely Evanthia Simoneau, *Stay Put and the Individuals with Disabilities Education Act: A Proposal for Clarity and Change*, 21 U. Pa. J.L. & Soc. Change 153, 177 (2018) (describing application of stay put rights in private schools as "a growing and still unresolved issue").

In New Jersey, pursuant to state regulations and caselaw, private schools are parties to administrative due process hearings, are responsible for the same substantive and procedural obligations as public schools, and may be subject to parental lawsuits as the IDEA permits against public school agencies. *See P.N. v. Greco*, 282 F. Supp. 2d 221, 234 (D. N.J. 2003). In other states, education agencies have used contract claims to enforce the terms of service agreements with private schools, which terms can require private schools to follow the same substantive and procedural rules as public schools. *See Koehler ex rel. Koehler v. Juniata Cnty. Sch. Dist.*, No. 1:07-CV-0117, 2008 WL 1787632, at *9 (M.D. Pa. Apr. 17, 2008) ("Indemnification provisions provide an incentive for a private entity, one not directly liable under the terms of the IDEA, to take every measure necessary to

satisfy its standards" and assists "the School District to encourage and enforce compliance"). Courts in some other states have also permitted students or parents to bring contract claims to enforce the terms of such agreements. *See Smith v. James C. Hormel School of Virginia Institute of Autism*, No. 3:08CV00030, 2009 WL 1081079, at *10 (W.D. Va. Apr. 22, 2009) (concluding that "as third party beneficiaries of the contract between [the private school] and [the local education agency], [the student and his parents] may assert a state law claim for breach of contract against [the private school] for suspending and terminating [the student] in violation of [the private school's] contractual obligations").

Maine's special education statutes provide agency rulemaking authority, *see* 20-A M.R.S.A. § 7005, and authorize special education services through contracts and through approved private schools, *id.* §§ 7251-A, 7252-A. Unlike New Jersey, Maine's statutes do not explicitly and unambiguously place the same IDEA-related obligations on private schools as they do on public schools. Maine law, however, provides that MDOE "may require that special education programs in an approved private school or agency receiving state funds comply with rules for the conduct of programs within public schools," *id.* § 7501, and an MDOE rule specifies that a receiving out-of-unit placement (including a private school) "is responsible for," among other things, "Implementing a child's Individual Education Program, which shall not be amended without an IEP Team meeting or the consent of the sending SAU and the parent (where applicable)," and "Ensuring compliance with these rules and the Individuals with Disabilities Education Act." MUSER §§ IX.3.H–I.

14

MDOE also has issued written guidance that "Special Purpose Private Schools . . . and other out-of-unit entities must ensure compliance with IDEA, utilizing the IEP team process and maintaining "stay put" in the event of a dispute. . . ."  Maine Department of Education, *Administrative Letter #28: IEP Requirements for Out-of-Unit Placements* (Nov. 24, 2021), *available at* mainedoenews.net/category/news-views/administrative-letters/page/2/.  The writing explained:

> The Department is concerned that some School Administrative Districts, [Special Purpose Private Schools], and Public Regional Programs believe that the language of MUSER XI.3.I allows a receiving out-of-unit placement to remove a student with a disability from school for any reason, without utilizing the IEP Team process, and without maintaining 'stay put' in the event of a dispute.  MUSER IX.3.I requires a receiving placement to ensure compliance with "these rules and the Individuals with Disabilities Act." While the Department views this language to cover the requirements for a change of placement, and for stay put, it is clear that some School Administrative Districts, [Special Purpose Private Schools], and Public Regional Programs have not operated with this understanding.
>
> After consulting with counsel, the Department has determined that [Special Purpose Private Schools] and other out-of-unit placements are not in compliance with IDEA when they terminate a student's placement without going through the IEP process. Maine will enforce the federal standard of using the IEP process in the change of placement.  Effective immediately, All SAUs must notify the [Special Purpose Private Schools] and out-of-unit placements that in order to continue these placements, they must abide by the federal standard and provide FAPE to eligible students who are placed at [Special Purpose Private Schools] and other out-of-unit placements.

*Id.*

Defendants argue that while the structure is not identical to New Jersey's process, under Maine law, a special purpose private school has the same obligation as a public school to provide FAPE, to follow the IEP process when seeking a change of placement, and to maintain "stay put" during a parental challenge. Plaintiff describes pertinent

provisions of Administrative Letter 28 as "incorrect[ ]," but Plaintiff has not offered an adequate explanation for why a federal court has license to disregard or overrule a state agency's interpretation of its own regulations. The only argument Plaintiff offers is that the subject of MDOE's interpretation is preempted by the IDEA and federal regulations, which (as discussed previously), states that: "Even if a private school or facility implements a child's IEP, responsibility for compliance with this part remains with the public agency and the [state agency]." 34 C.F.R. § 300.325(c).

Federal statutes and agency rules can preempt state law (1) expressly; (2) by occupying the field, which occurs when (a) federal regulation is so pervasive that it leaves no room for state supplementation, or (b) the federal interest is so dominant that the federal system precludes states from addressing the same topic; or (3) when there is a conflict between federal and state rules, which occurs when (a) it is impossible for a regulated actor to comply simultaneously with the federal and state rules, or (b) the state rules stand as an obstacle to the purposes and objectives of the federal rules. *Capron v. Office of Attorney General of Massachusetts*, 944 F.3d 9, 21–22 (1st Cir. 2019).

The merit of Plaintiff's conflict preemption argument is questionable because the concept that private schools would have a duty to comply with certain IEP protections is not inconsistent with the federal mandate that public agencies are obligated to ensure compliance. As Defendants note, private school responsibility does not imply a lack of public agency responsibility, nor does it transfer responsibility from the public agency. Plaintiff argues that Defendants' interpretation of the Maine regulations improperly relieves local education agencies of their responsibility to ensure compliance with the

IDEA because the regulation upon which MDOE relied in issuing the administrative guidance document, MUSER IX.3.I, does not include ensuring compliance with "the IDEA" among the listed responsibilities of the sending school administrative unit, but instead only specifies in the list of responsibilities that the sending unit must ensure compliance with "this rule."

Plaintiff's argument is unavailing. While the regulation requires a receiving unit to ensure compliance with the IDEA, the regulation cannot reasonably be interpreted to relieve a local education agency of its obligation to ensure compliance with the IDEA. The sending unit's obligation to ensure compliance "with this rule" necessarily requires that the sending unit ensure that the receiving unit comply with the IDEA. Indeed, in the paragraph of the regulation immediately preceding the list of responsibilities, the regulation provides that "[t]he sending SAU has the administrative responsibility for the education of a child with a disability who has been placed in an out-of-unit placement." MUSER IX.3.I. The rule simply confirms a local education agency's obligation to ensure compliance with the IDEA in the event of an out-of-unit placement. The rule does not override other provisions, including a state statute, which explicitly require the local education agency to maintain responsibility for programs provided by an approved private school. *See* 20-A M.R.S.A. §§ 7252-A(1).

Concurrent obligations for public education agencies and private schools do not undermine the purposes and goals of the IDEA. The approach taken in the IDEA and in the relevant federal regulations expressly contemplates state regulation of private schools and permits states to enact more stringent education standards than the federal minimum

standard.  *See* 20 U.S.C. § 1401(9)(B) (incorporating "standards of the State educational agency" into the federal FAPE standard); *Town of Burlington v. Department of Education for Commonwealth of Massachusetts*, 736 F.2d 773, 789 (1st Cir. 1984).  Plaintiff has not cited any authority, and the Court has not identified any authority, to support Plaintiff's contention that state laws may not place duties on private schools analogous to public schools.  The prominence of New Jersey's approach also undermines Plaintiff's argument, as do other similar suggestions in caselaw.  *See, e.g.*, *St. Johnsbury Academy*, 240 F.3d at 172 (noting that "Vermont does not provide for a similar action against a private school" without suggesting any doubt whether the IDEA would allow a state to provide for an action against a private school).

The fact that Maine law could permissibly require private schools to comply with the placement protections does not mean that there is currently an enforcement mechanism against a private school.  Defendant Frazek's second order implicitly acknowledged that a hearing officer lacks the authority under Maine law to order a private school to take certain action because private schools do not participate in due process hearings.  MDOE agrees that Defendant Frazek lacked the authority to order Plaintiff to take any specific action.  MDOE contends that the hearing officer could have issued a stay put order to LPS, which order would have prompted LPS to take any available actions as to Plaintiff.  LPS could have challenged any such order in court. The record, however, establishes that neither MDOE nor LPS has taken any action as to Plaintiff.  In fact, although the parties dispute whether state law imposes stay put obligations on Plaintiff, there is no real dispute that

Maine law currently does not permit due process hearing challenges and subsequent IDEA claims in federal court against private schools to enforce the state law requirements.[3]

Because neither MDOE nor LPS has taken any action against Plaintiff to compel Plaintiff to maintain Tommy's placement, Plaintiff has arguably failed to allege a dispute that is ripe for disposition as MDOE argues. In this way, while the Court understands that some parties might want the Court to clarify the obligations, if any, of private schools under the IDEA and state law, because there is no pending claim that Plaintiff is being directed to maintain stay-put for Tommy, Plaintiff also arguably seeks an advisory opinion as LPS contends. In any event, Plaintiff has not demonstrated a likelihood of success on its IDEA-related claim.

**B.    Other Factors (Irreparable Harm, Public Interest)**

Because Plaintiff has failed to establish that it will likely succeed on the merits of its due process or IDEA claims, the Court need not dwell on the remaining factors. *See New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity"). Nevertheless, a comment on two of the other factors is warranted.

---

[3] Notably, MDOE maintains that the obligation to ensure that Tommy receives a FAPE continues to rest with LPS and that assuring compliance remains with the state. The hearing officer's conclusion regarding LPS's responsibility for a compensatory education remedy is consistent with that view. MDOE and LPS do not dispute their responsibilities under the IDEA or Maine law.

Because there is essentially no dispute among the parties that Defendant Frazek lacked authority to order Plaintiff to readmit Tommy when Plaintiff was not a party to the due process proceeding and because the MDOE has taken no action to revoke Plaintiff's approval as a special purpose private school or otherwise sanction Plaintiff for unilaterally terminating Tommy outside the IEP process, Plaintiff has failed to demonstrate irreparable harm. Plaintiff characterizes the MDOE's position as a voluntary cessation argument that would not undermine Plaintiff's case, but Plaintiff's argument is unconvincing. MDOE has never taken any adverse action against Plaintiff and has been consistent in its assessment regarding the limited remedies currently available to encourage private schools to maintain placements. Plaintiff's failure to demonstrate irreparable harm precludes preliminary injunctive relief. *Gonzalez-Droz v. Conzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009) (quoting *Charlesbank Equity Fund II v. Blinds To Go, Inc*., 370 F.3d 151, 162 (1st Cir. 2004)) ("'[I]rreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.'").

Regarding the public interest, Defendants and one amicus curiae persuasively argue that state agencies should be allowed to exercise their own authority to regulate private schools in an identical manner because the public would not be served by removing an effective tool to ensure that students in private schools are treated the same as students in public schools. Plaintiff and two amicus curiae, on the other hand, argue persuasively that a judicial decision would help provide needed certainty regarding private schools' obligations and that imposition of similar obligations as public schools would eliminate flexibility that small private entities need and would threaten their ability to continue

20

providing services. The Court, however, does not have to determine which argument would advance the public interest more. Where Plaintiff has failed to demonstrate a likelihood of success on its claims or demonstrate irreparable harm in the absence of a preliminary injunction, the public interest assessment is inconsequential.

## CONCLUSION

After an assessment of the factors relevant to Plaintiff's request for preliminary injunctive relief, the Court concludes that Plaintiff is not entitled to the relief that it seeks. Accordingly, the Court denies Plaintiff's motion for a preliminary injunction.


                                         /s/ John C. Nivison
                                         U.S. Magistrate Judge

Dated this 19th day of August, 2025.